## YELLOW CAB MAXI TAXI CO. v. DADE COUNTY
81-164-AP

Circuit Court, Eleventh Circuit, Appellate Division

September 14, 1981

Stuart L. Simon, of Fine, Jacobson, Block, Klein, Colan & Simon, P.A., for the petitioner.

Stephen P. Lee, Assistant County Attorney, for the respondent.

Before SCOTT, KOGAN, SALMON, J.J.

The Petitioner was issued 14 permits to operate maxi-taxis at Dodge Island Seaport.[1] The Permits were designated "temporary", were to expire one month after their issuance, and required payment of the same fee as if it were an annual permit.[2] The arrival of the maxi-taxis at the seaport was not well received by the regular cab drivers operating there. After some preliminary problems, the Seaport Director was told that if he did not remove the maxi-taxis from the seaport, the cab drivers would shut down or refuse to service the port. Shortly after this threat was delivered, the cab drivers staged a work stoppage by unloading passengers and their luggage at the port entrance rather than at the terminals; then they formed a picket line at the port entrance. Following that, the cab drivers appeared before the County Commissioners to demand the cancellation of the maxi-taxi permits. Because of the potential for violence that had arisen, the Seaport Director requested an additional 100 Public Safety Department officers for assignment at the Seaport.

When the Petitioner applied for permanent permits it was turned down. The formal process of appealing that decision was followed, a hearing officer was appointed, findings were made, and ultimately the County Manager decided to deny access permits to the Petitioner. A somewhat twisted legal route was then followed; ultimately the matter came before us for petition for writ of certiorari to review the decision of the County Manager.

[1] A maxi-taxi is a vehicle which can carry nine or more passengers and their luggage.

[2] Petitioner claims that there is no provision in the governing ordinance for issuance of anything except an annual license.

The principal thrust of Petitioner's argument is that it was denied due process of law because the ordinance pursuant to which the County Manager refused to renew their permits vested arbitrary discretion in the County Manager without prescribing definite rules and conditions for the guidance of the manager in the execution of that discretionary power. See *City of Tampa vs. Island Town, Inc.,* 364 So.2d 739 (Fla. 2d DCA 1979), citing *Vicbar, Inc. v. The City of Miami,* 330 So.2d 46 (Fla. 3d DCA 1976).[3] The Respondent claims that whatever deficiency may exist in the governing ordinances is cured by Chapter 125, Florida Statutes.

The Petitioner is correct. We have not been cited to any County ordinances or State Statute that meets the test required by *City of Tampa* and *Vicbar.* Even if these criteria had been met, it seems clear from the record that the real (and probably only) reason for the County Manager's action was the cab drivers' militant action. No validly enacted ordinance or statute would permit that sort of conduct to govern the County Manager's action.

The Writ of Certiorari sought by Petitioner is granted, the County Manager's decision is reversed, and the Respondent is directed to issue the seventeen permanent permits for which the Petitioner applied on April 15, 1981.

</div>

---

[3]Those cases dealt with revocation of license. The Petitioner claims that failure to renew one in this case equates to revocation; we agree.